UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN RAYMOND PUDNEY,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____

Case No. 21-10648
District Judge Robert H. Cleland
Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Brian Raymond Pudney seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Pudney's application for Social Security Disability Income under the Social Security Act. Pudney filed a motion for summary judgment (ECF No. 13) and the Commissioner filed a response and cross-motion for summary judgment (ECF No. 14). Pudney did not file a reply.

For the following reasons, the Court **RECOMMENDS** that Pudney's motion for summary judgment be **DENIED**, that the Commissioner's motion for

summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

I.  **Background**

  A. **Procedural History**

Pudney applied for benefits on May 24, 2019, alleging disability beginning November 2, 2016. (Tr. 167.[1]) The Social Security Administration denied his application. Pudney requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On August 4, 2020, ALJ Joy Turner held a hearing via telephone due to the COVID-19 pandemic. (*Id.* at 33-58.) Pudney appeared with an attorney and testified. (*Id.*) The ALJ also received testimony from Zachary Matthews, a vocational expert. (*Id.*) In her August 13, 2020 decision, the ALJ found that Pudney was not disabled. (Tr. 27.) The Appeals Council denied review on January 27, 2021, which made the ALJ's decision final. (Tr. 1; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004)).

  B. **The ALJ's Application of the Disability Framework**

Under the Social Security Act, disability insurance benefits and supplemental security income are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the

---

[1] The administrative record appears on the docket at ECF No. 10. All references to it are identified as "Tr."

2

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Pudney was 51 years old on the alleged disability onset date. (Tr. 239.) He attended some college classes but did not obtain a degree. (Tr. 191). Previously, he worked as a support counselor in the court system where he taught classes, and counseled and corresponded with individuals who appeared in court. (Tr. 54, 192, 276.)

The ALJ applied the five-step disability analysis. At step one, the ALJ found that Pudney had not engaged in substantial gainful activity since the alleged onset date of November 2, 2016. (Tr. 17.) At step two, the ALJ found that Pudney had the following severe impairments: essential hypertension, dizziness, asthma, a dysthymic disorder, and polysubstance use. (Tr. 21.) At step three, the ALJ found no evidence that Pudney's impairments met or medically equaled one of the listings in the regulations. (Tr. 22.) Next, the ALJ determined that Pudney has the

RFC to perform work at all exertional levels with certain non-exertional limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds; the claimant would need to avoid hazardous machinery and heights; the claimant would need to avoid more than occasional exposure to extreme cold, heat, or humidity; the claimant would need to avoid exposure to environmental conditions . . . and the claimant is limited to simple routine tasks with no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. 23.) At step four, the ALJ denied Pudney benefits, finding that Pudney cannot perform past relevant work but can perform other work consistent with his RFC. (Tr. 26.) The ALJ further found that there are jobs in significant numbers in the national economy that Pudney can perform, including mixer, packer, and waxer. (Tr. 26.) Accordingly, the ALJ found that Pudney was not disabled. (Tr. 27.)

## I. Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

### B. Analysis

Pudney argues that the ALJ erred in her step two assessment, RFC assessment, and hypothetical question posed to the vocational expert. The Commissioner disagrees.

#### 1. *The ALJ's Step Two Assessment*

Pudney erroneously argues that the ALJ did not find that his depression constituted a severe impairment. (Doc. 14, PageID. 897.) The ALJ found that Pudney's severe impairments included "dysthymic disorder." (Tr. 21.) As the Commissioner noted, dysthymic disorder is the medical term for depression. (Doc. 14, PageID. 897.); *Dorland's Illustrated Medical Dictionary* (32nd ed. 2012). Therefore, Pudney incorrectly claimed that the ALJ failed to list depression among the severe impairments.

#### 2. *The ALJ's RFC Assessment*

An RFC "is the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2). Pudney bears the burden to demonstrate that he has a more restrictive RFC than that found by the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999); *see*

*also Jones*, 336 F.3d at 474.

Pudney contends that the ALJ did not properly account for his dizziness/lightheadedness and depression in her RFC. (Doc. 13, PageID. 874.) In contrast, the Commissioner argues the ALJ appropriately limited Pudney to work: 1) without "climbing ladders, ropes, or scaffolds, and no heights or hazardous machinery" and 2) with "simple, routine tasks, no interaction with the public, and only occasional interaction with coworkers and supervisors." (Doc. 14, PageID. 898.) The Commissioner asserts that those limitations respectively accounted for Pudney's dizziness/lightheadedness and depression. (*Id.*)

Pudney reported to medical providers and testified at the ALJ's hearing regarding frequent dizziness and falls each week and his resultant caution when he walked around his house due to dizzy spells. Tr. 44-45. He also stated that he "lacked motivation" and "the ability to concentrate and remember things." Tr. 24, 49-50; (Doc. 13, PageID.878-79.) The ALJ found that Pudney's statements as to "the intensity, persistence and limiting effects of [his] symptoms" were not totally consistent with medical evidence and other evidence in the record. Tr. 25.

The Sixth Circuit provides that "[a] claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x. 802, 804 (6th Cir. 2012) (citation omitted). Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze

the consistency of the claimant's statements with objective medical and other evidence in the claimant's record. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(a).

To evaluate a claimant's subjective symptoms, ALJs must follow a two-step process. *Id.* The ALJ must first confirm whether there is objective medical evidence of the underlying condition from an acceptable medical source. *Id.* If there is, the ALJ examines the intensity and persistence of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* In doing so, the ALJ must consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any measures used to relieve symptoms; and (7) other factors concerning a claimant's functional limitations due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

Additionally, the Sixth Circuit has stated that an ALJ is not required to accept a claimant's subjective complaints. *Jones*, 336 F.3d at 475. In *McCready v. Comm'r of Soc Sec.*, the court discounted a physician's opinion because their observations were "merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or

9

restrictions." 2012 WL 1060088, at *8 (E.D. Mich. 2012), report and recommendation adopted, No. 10-13893, 2012 WL 1059747 (E.D. Mich. Mar. 29, 2012).

The ALJ considered Pudney's hearing testimony, a function report dated August 10, 2019, and numerous medical records, including progress notes, hospital reports, and state agency opinions. (Tr. 24-30.) The ALJ considered Veteran's Administration Hospital staff reports compiled by Kimberly Arne, LCSW (August 3, 2017 notes); Michael Lyons, PA-C (August 31, 2017, October 12, 2017, and November 22, 2017 notes); Melissa Mariutza, NP (May 31, 2019, May 7, 2020, and July 27, 2020 notes and reports); Ana Divina, NP (August 8, 2019 notes); and Kelly Ringle, RN (September 30, 2019 and October 2, 2019 notes). (Tr. 22-26, 376-81, 389-96; 400-04, 506-08, 514-18, 803-05, 808-09, 812-14.)

The ALJ documented Pudney's phone conversation with Arne and his concerns about depression and prescribed medication not working. (Tr. 20; 402-04.) Approximately three weeks later, Lyons examined Pudney and documented his complaints including those regarding dizziness and his report of taking Wellbutrin twice per day. (Tr. 20-21, 400-02.) Lyons' next examination documented Pudney's statements about increased alcohol use, ongoing depression, and clinical finding of a normal gait. (Tr. 21, 389-90.) Pudney received additional prescriptions, including one for Lexapro. (Tr. 21, 396.) Lyons' last examination of

10

Pudney resulted in a prescription for high blood pressure. (Tr. 21, 376-81.) The ALJ documented nearly an eighteen-month gap in Pudney's receipt of medical treatment. (Tr. 21, 504.) Mariutza's initial examination of Pudney revealed a normal gait. (Tr. 22, 508.) Divina's examination three months later noted Pudney's ongoing chemical dependency and irritability when asked questions about his past and present health (Tr. 22, 514-18.) In a telephone call with Ringle, Pudney stated that he had suffered lightheadedness, multiple falls, high blood pressure readings and would be going to a specific hospital for treatment. (Tr. 22, 803.) A follow-up call three days later revealed that Pudney had not gone to the hospital and he also stated that he felt that the Veteran's Administration clinic would not do anything if he went to the clinic. (Tr. 22, 803-05.) Four days later, at a cardiologist appointment at a hospital, Pudney had high blood pressure readings, reported dizziness, and passed out for several seconds. (Tr. 23, 643.) His diagnoses included depression and hypertension. (Tr. 23, 643.) In a telephone appointment with Mariutza, Pudney reported a lack of follow-up with the Veteran's Administration Hospital and failure to follow-up with mental health care and that he could not quantify how much alcohol he consumed but that he consumed less due to the cost of alcohol purchases. (Tr. 23-24, 792.) Thereafter, in a medical questionnaire, Mariutza opined that Pudney could not work and must be cautious due to dizziness, risk of fainting and falls, but had no functional limitations (Tr. 24, 808-

11

09, 812-14.) Mariutza based her assessment on Pudney's subjective reports. (Tr. 808, 812.)

State agency medical consultants provided opinions that Pudney had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and must avoid extreme cold, heat, humidity, and only have moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 25). The ALJ deemed the state medical consultants' opinions persuasive and consistent with medical evidence. (*Id.*)

The ALJ noted Pudney's failure to follow-up with mental health treatment, failure to follow up with neurology and endocrinology referrals despite transportation problems, and the ALJ did not credit Mariutza's findings about Pudney's inability to work given lack of functional limitations and the reliance on subjective statements. (Tr. 25.) The ALJ considered Pudney's statements regarding his ability to care for himself and engage in activities including the following: rarely driving himself to the grocery store and maintaining a driver's license; preparing food in a microwave; doing some laundry; caring for pets; doing "ok" with following written and spoken instructions; paying attention when feeling well; completing tasks; and getting along with family, friends, or neighbors. (Tr. 25-26, 45-46.) The ALJ found Pudney's statements inconsistent with total disability. (Tr. 26.)

Substantial evidence supports the ALJ's determination that though Pudney has severe impairments, his impairments do not exceed the ALJ's RFC assessment here. Tr. 27; *See Kaufman*, 2020 WL 7701020, at *17. The ALJ credited Pudney's diagnoses and found that they constituted severe impairments, but found that his subjective reports of his limitations, which Mariutza accepted, were not credible. Even if this Court would weigh the evidence differently, substantial evidence supports the ALJ's findings as the Commissioner notes: numerous normal findings in mental abilities and a "normal gait" and the ability to get "on and off the examination table without difficulty." (Doc. 14, PageID.902-03.)

### 3. *The ALJ Appropriately Questioned the Vocational Expert*

To meet their step five burden, the ALJ must make a finding "supported by substantial evidence that [Pudney] has the vocational qualifications to perform specific jobs." *Tarley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). This type of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [Pudney's] individual physical and mental impairments.'" *Tarley*, 820 F.2d at 779 (citation omitted). Pudney argues that the hypothetical posed to VE Zachary Matthews did not adequately account for his dizziness and depression. The ALJ posed four

13

hypotheticals in alignment with the RFC, specifying the (1) inability to climb ladders, ropes, or scaffolds; (2) avoidance of hazardous machinery and heights; (3) limitation to no interaction with the public and occasional interaction with coworkers and supervisors, among other restrictions. (Tr. 55–57.)

The ALJ's partial rejection of Pudney's subjective complaints provided her with the freedom to present hypothetical questions to the vocational expert which reflected the ALJ's assessment of Pudney's limitations. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248-49 (6th Cir. 2016). The Court finds that the hypothetical was consistent with the RFC given the ALJ's findings that Pudney's subjective complaints were inconsistent with the medical evidence. (Tr. 25-26.)

Substantial evidence supports the ALJ's findings, even if Pudney disagrees with those findings.

## II.   Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Pudney's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Dated:   July 22, 2022                    s/**Jonathan J.C. Grey**
                                          Jonathan J.C. Grey
                                          United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on July 22, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager
